[601 NYS2d 504]

In the Matter of ROGER I. MILCH (Admitted as ROGER IRVING MILCH), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, August 23, 1993

### APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains *(Etta M. Biloon* of counsel), for petitioner.

*Joseph P. Governali,* White Plains, for respondent.

### OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was charged with eight

allegations of professional misconduct. The Special Referee sustained all eight charges. The petitioner has moved to confirm the report of the Special Referee. The respondent has joined in the motion to confirm and requests that the Court impose an appropriate sanction, taking into consideration the factors offered in mitigation.

Charge One alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation and conduct adversely reflecting on his fitness to practice law by converting funds entrusted to him to be held in escrow. Between September 1983 and April 1985, the respondent maintained an escrow account at Manufacturer's Hanover Trust Bank, Account No. 162-008101. He deposited $1,000 into that account on November 14, 1983, on behalf of a client, Isabel Sands, regarding a matter captioned *Sands v Sands.*

Between November 1983 and May 1984, the respondent issued six checks, totaling $298.30, from the escrow account for expenses related to *Sands v Sands,* leaving a balance of $701.70. The respondent closed the escrow account on April 5, 1985. Between May 1984 and April 1985, the respondent issued no further checks from the escrow account relating to the *Sands* matter. Yet, the respondent's balance, during that interval, consistently dipped below the amount the respondent was required to hold on behalf of Sands. When the respondent closed the account, it showed a balance of $5.30, notwithstanding that he should have been holding $701.70 on behalf of Sands.

Charge Two alleged that the respondent issued a check from his escrow account to a client for whom no funds were on deposit. On or about March 1985, the respondent opened a new escrow account at the White Plains branch of National Westminster Bank, Account No. 2-377-65517-7. No deposits were made to that account relating to the *Sands* matter between March 1985 and June 1986. On or about June 2, 1986, the respondent issued check No. 1036 from that escrow account, payable to Isabel Sands' mother, in the sum of $701.70.

Charge Three alleged that the respondent converted funds entrusted to him to be held in escrow on behalf of a client named "Beatty". The respondent made the following deposits into his escrow account in connection with the *Beatty* matter: $1,500 on or about April 24, 1984, and $900 on or about May 1, 1984. The respondent issued check No. 1426 from the escrow account on or about May 4, 1984, in the amount of

$750, payable to Mary Ellen Beatty, as "partial distribution to [the] defendant [in] *Beatty v Beatty*". No further checks were issued from the respondent's account in connection with that matter until August 1984.

Between May 10 and August 15, 1984, the respondent was required to be holding $1,650 in connection with the *Beatty* matter. On August 13, 1984, the account balance was $431.70, reflecting a shortage of funds in the approximate sum of $1,200.

Charge Four alleged that the respondent commingled funds and failed to maintain a duly constituted escrow account. Between approximately June 1984 and August 1984, the respondent made deposits of personal funds from his business account into his escrow account at a Manufacturer's Hanover bank. During that interval, the respondent issued checks from the escrow account, unrelated to any client matter, payable to cash or to himself.

Charge Five alleged that the respondent commingled funds and failed to maintain a duly constituted escrow account with respect to the escrow account he maintained at National Westminster Bank between March 1985 and February 1989. In or about April 1986, the respondent and one Andrew Vachss became involved in a business venture known as "Soddi Stables" and invested in a racehorse named "Country Fare". Between April 1986 and early 1987, the respondent made deposits of personal funds into his escrow account relative to "Country Fare" and/or "Soddi Stables". Between April 1986 and July 1987, the respondent issued checks from his escrow account to cover personal expenses relative to "Country Fare" and/or "Soddi Stables".

Charge Six alleged that the respondent commingled funds and failed to maintain a duly constituted escrow account by depositing $200 of personal funds from his business account to the escrow account at National Westminster Bank in or about June 1988. In late June 1988, the respondent issued three checks from his escrow account at National Westminster for personal purposes totalling $80.

Charge Seven alleged that the respondent failed to maintain a duly constituted escrow account, in that his escrow account at National Westminster was overdrawn on several occasions between December 1986 and March 1987.

Charge Eight alleged that the respondent neglected a legal matter entrusted to him. The respondent was retained, in or

about 1986, to represent Robert Nunez with respect to a claim for damages for inferior auto body work. In or about April 1987, a stipulation was executed by the respondent and the defendant's attorney, whereby the parties agreed to refer the matter to arbitration. By short form order dated January 29, 1988, the matter was referred to arbitration, and the respondent was directed to file a note of issue. The respondent failed to file the note of issue and took no action in the case after January 1988.

In view of the documentary evidence, the respondent's stipulation, and his testimony at the hearing, we find that the Special Referee properly sustained all eight charges. Accordingly, the petitioner's motion to confirm the report of the Special Referee is granted, without opposition.

In determining an appropriate measure of discipline, we have taken into consideration the mitigating circumstances advanced by the respondent including his tremendous personal hardships, his cooperation with the Grievance Committee's investigation, and the absence of pecuniary loss to his clients. The respondent's admissions and the documentary evidence nevertheless reveal a pattern of disregard for the canons of ethics by which all attorneys are bound. Under the circumstances, the respondent is disbarred.

MANGANO, P. J., THOMPSON, BRACKEN, SULLIVAN and ROSENBLATT, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Roger I. Milch, is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Roger I. Milch is commanded to desist and refrain (1) from practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) from appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) from giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) from holding himself out in any way as an attorney and counselor-at-law.